No. 15-5850

---

IN THE

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA

Plaintiff/Appellee

v.

TERRY SMITH

Defendant/Appellant

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY, SOUTHERN DIVISION AT LONDON

---

BRIEF OF DEFENDANT/APPELLANT TERRY SMITH

---

Michael J. Stengel (Tenn. #12260)
62 North Main Street, Ste. 401
Memphis, TN 38103
Telephone:  (901) 527-3535
Facsimile:  (901) 302-4867
E-Mail:  stengel12260@mjspc.com

Court-appointed counsel for
Defendant/Appellant, Terry Smith

**Oral Argument Requested**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ................................................1

JURISDICTIONAL STATEMENT ...........................................................2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................3

STATEMENT OF THE CASE.................................................................4

STATEMENT OF RELEVANT FACTS ................................................7

SUMMARY OF ARGUMENT ...............................................................15

LAW AND ARGUMENT ....................................................................
      FIRST ISSUE...........................................................16
      SECOND ISSUE ....................................................23
      THIRD ISSUE ........................................................32

CONCLUSION ...............................................................................34

CERTIFICATE OF SERVICE ............................................................34

CERTIFICATE OF COMPLIANCE....................................................35

ADDENDUM .................................................................................36

# TABLE OF AUTHORITIES

<u>Cases</u>:                                                                          <u>Page</u>

<u>Burrage v. United States</u>, ___U.S.__, 134 S.Ct. 881 (2014) .............................24, 27

<u>Jackson v. Virginia</u>, 443 U.S. 307 (1979)................................................................23

<u>United States v. Caver</u>, 470 F.3d 220 (6th Cir. 2006) ..............................................16

<u>United States v. Chavis</u>, 296 F. 3d 450 (6th Cir. 2002)............................................17

<u>United States v. Grubbs</u>, 773 F.3d 726 (6th Cir. 2014) ...........................................21

<u>United States v. Hines</u>, 398 F.3d 713 (6th Cir. 2005)..............................................32

<u>United States v. Miller</u>, 767 F.3d 585 (6th Cir. 2014)............................................24

<u>United States v. McCarter</u>, 316 F.3d 536 (5th Cir. 2002)........................................17

<u>United States v. McGuire</u>, 2012 WL 668803 (M.D. Tenn. 2012)....................17, 19

<u>United States v. Smith</u>, 197 F.3d 225 (6th Cir. 1999) .............................................16

<u>United States v. Sykes</u>, 292 F.3d 495 (6th Cir. 2002) .............................................23

<u>United States v. Sypher</u>, 684 F.3d 622 (6th Cir. 2012)............................................32

<u>United States v. Talley</u>, 164 F.3d 989 (6th Cir. 1999).............................................23

<u>United States v. Turner</u>, 287 Fed. Appx. 426 (6th Cir. 2008) .................................32

<u>United States v. Volkman</u>, 797 F.3d 377 (6th Cir. 2015)........................................24


<u>Statutes</u>:

18 U.S.C. § 922(g) ........................................................................................5, 17, 19

21 U.S.C. § 841(a)(1) ............................................................................4, 24

21 U.S.C. § 846 ..........................................................................................4

21 U.S.C. § 853 ..........................................................................................5

28 U.S.C. § 1291 ........................................................................................2

Other Authorities:

6th Cir. R. 28 ..........................................................................................36

6th Cir. 30(g)(1) ....................................................................................36

6th Cir. R. 34(a) ......................................................................................1

Fed. R. App. P. 32(a)(7) ...........................................................................35

Fed R. App. P. 32(a)(7)(A) ......................................................................35

Fed. R. App. P. 32(a)(7)(b) ......................................................................35

Fed. R. Crim. P. 8(a) ..........................................................................7, 16

Fed. R. Crim. P. 14(a) ........................................................................7, 16

Fed. R. Evid. 404(b) .........................................................................17, 33

Rule 32(a)(7) .............................................................................................20

## STATEMENT REGARDING ORAL ARGUMENT

Comes now the Defendant/Appellant, Terry Smith and, pursuant to 6th Cir. R. 34(a), requests oral argument.  This appeal involves significant issues of due process and fundamental fairness.  Counsel's argument will assist the Court in understanding the record below and how the errors rendered Terry Smith's trial fundamentally unfair, resulting in his service of a mandatory term of life without parole.

## **JURISDICTIONAL STATEMENT**

Terry Smith appeals, as a matter of right, the judgment (R. 258, Judgment, ID 1049-54) entered against him in the criminal case below on July 24, 2015. The United States Court of Appeals for the Sixth Circuit has jurisdiction to consider the present appeal pursuant to 28 U.S.C. §1291. Mr. Smith timely filed a notice of appeal on July 28, 2015. (R. 259, Notice of Appeal, ID 1055). The judgment, (R. 258, Judgment, ID 1049-54), disposed of all claims with respect to the parties herein and was a final decision of the district court.

## STATEMENT OF THE ISSUES

I.      The district court abused its discretion in denying Terry Smith's motion to sever count 3, alleging that he was a felon in possession of firearms, from the remaining counts for trial.

II.     No rational fact finder could conclude that the United States established the elements of distribution of oxycodone resulting in death beyond a reasonable doubt. Therefore, the evidence is insufficient to support the verdict on Count 2.

III.    The cumulative effect of the trial errors deprived Terry Smith of the due process he is constitutionally guaranteed, thereby mandating the convictions be vacated and the case remanded for a new trial.

## STATEMENT OF THE CASE

The case against Terry Smith commenced with the filing of a criminal complaint on August 21, 2013.  (R. 1, Complaint, ID 1-10).  Mr. Smith was arrested, made his initial appearance, and was declared indigent on August 22, 2013.

On August 22, 2013, a grand jury for the Eastern District of Kentucky returned a one count indictment charging Terry Smith with conspiracy to distribute oxycodone.  (R. 2, Indictment, ID 11-12).

On August 26, 2013, Terry Smith was arraigned and entered a not guilty plea. (R. 13, Minutes for Docket Call).

Commencing December 19, 2013, a series of superseding indictment were returned against Terry Smith.  (R. 30, Superseding Indictment, ID 76-79; R. 58, Second Superseding Indictment, ID 143-46; R. 163, Third Superseding Indictment, ID 476-80).

The third superseding indictment was returned on December 18, 2014. It charged Mr. Smith with conspiracy to distribute a quantity of pills containing oxycodone between March, 2011 and August 22, 2013 contrary to 21 U.S.C. § 846 (Count 1); knowingly and intentionally distributing a quantity of pills containing oxycodone which resulted in the death of Patty Smallwood on September 9, 2011 contrary to 21 U.S.C. § 841(a)(1)   (Count 2); knowingly possessing several

4

firearms as a convicted felon on August 21, 2013 contrary to 18 U.S.C. § 922(g)
(count 3); and sought criminal forfeiture pursuant to 21 U.S.C. §853. (R. 163,
Third Superseding Indictment, ID 476-80; R. 166, Motion to Amend Indictment,
ID 489-91).

On December 19, 2014, Terry Smith was arraigned and entered a not guilty
plea. (R. 167, Minutes for Arraignment).

On January 5, 2015 Terry Smith sought to sever the felon in possession
charge, count 3, from counts 1 and 2 for trial purposes. (R. 171, Motion to Sever,
ID 503-05). The United States opposed the motion and Mr. Smith filed a response.
(R. 173, U.S. Opposition to Severance, ID 508-14; R. 181, Smith's Response, ID
595-97). The district court entered an order denying severance on January 14,
2015. (R. 185, Order Denying Motion to Sever, ID 607-10).

Prior to trial, on January 19, 2015, the United States filed a notice of
enhanced punishment in the event of conviction. (R. 193, Information § 851, ID
645-46).

Trial commenced on January 20, 2015 and continued through January 26,
2015. (R. 197, Minutes: Jury Trial Day 1; R. 198, Minutes: Jury Trial Day 2; R.
200, Minutes: Jury Trial Day 3; R. 202, Minutes: Jury Trial Day 4; R. 207,
Minutes: Jury Trial Day 5). The jury returned a guilty verdict on January 26, 2015.
(R. 208, Jury Verdict, ID 761-62).

On February 9, 2015 Terry Smith filed a motion for a directed verdict. (R. 211, Motion for Judgment of Acquittal, ID 765-71). The government filed a response in opposition, (R. 217, U.S. Response to Motion for Judgment of Acquittal, ID 836-45), and the motion was denied on July 21, 2015. (R. 249, Opinion and Order, ID 995-1031).

Sentencing was conducted on July 23, 2015, (R. 250, Minutes: Sentencing), and judgment entered July 24, 2015. (R. 258, Judgment, ID 1049-54). Mr. Smith timely filed a notice of appeal on July 28, 2015, which he perfected to this Court. (R. 259, Notice of Appeal, ID 1055).

## STATEMENT OF RELEVANT FACTS

Promptly upon the return of the third superseding indictment which, for the first time, alleged that Terry Smith was a convicted felon in possession of firearms on August 21, 2013, (R. 163, Third Superseding Indictment, ID 476-80; R. 166, Motion to Amend Indictment, ID 489-91), Terry Smith sought to sever that charge from the conspiracy to distribute oxycodone and distribution of oxycodone resulting in death charges for trial. (R. 171, Motion to Sever, ID 503-05). Severance was sought pursuant to Fed. R. Crim. P. 14(a) due to the unfair prejudice establishing Terry Smith's prior record would have with respect to the drug distribution resulting in death charge, which carried a mandatory life sentence. In seeking severance, Mr. Smith noted the belated addition of the charge, virtually on the eve of a trial, which both parties had spent just over a year preparing. (R. 171, Motion to Sever, ID 503-05; R. 181, Reply to Response, ID 595-97).

The United States opposed severance, contending joinder was proper pursuant to Fed. R. Crim. P. 8(a) and that the timing was merely the grand jury "cleaning up the case in final preparation for trial". (R. 173, U.S. Opposition to Severance, ID 508-14). The United States buttressed its argument against severance by contending that his August 21, 2013 firearm possession was proof of the drug trafficking conspiracy, that several witnesses would testify they observed

7

Smith possessing firearms on multiple occasions, and a witness was expected to testify that Terry Smith assaulted him with a firearm. In addition, the United States anticipated introducing evidence that Smith moved firearms from his primary residence in Manchester, Kentucky to a secondary residence in Berea, Kentucky. *Id.*

At trial, the evidence demonstrated that no weapons were seized at Terry Smith's residence, his wife and co-defendant, Gerry Smith, had a concealed carry gun permit, and none of the firearms seized at the Berea, Kentucky property leased by the Smith's had Terry Smith's fingerprints. (R. 287, TR., 1/21/15, ID 1440-44). Several witnesses denied that they had ever seen Terry Smith with a firearm or seen guns at his residence, (R. 287, TR., 1/21/15, ID 1483, 1582; R. 288, TR., 1/22/15, ID 1658; R. 289, TR., 1/23/15, ID 1770), although Brandon Stanley testified he saw Terry Smith with a gun on a couple of undated occasions. (R. 288 TR., 1/22/15, ID 1682-83). Finally, there was no evidence that Terry Smith was involved in an altercation with a firearm due to the district court granting a defense objection. (R. 288, TR., 1/22/15, ID 1658-60). During the government's case in chief on all counts, Terry Smith stipulated that he was a convicted felon. (R. 288, TR., 1/22/15, ID 1720).

Pre-trial the district court "recognize[d] the potential prejudice that may arise from joining count 3", (R. 185, Memorandum Opinion and Order. ID 609),

didn't address bifurcation, concluded that a temporal and logical connection existed, and denied the severance. (R. 185, Memorandum Opinion and Order, ID 607-10). Despite the dramatic variance between the anticipated proof the United States relied upon in opposing severance and the evidence it introduced at trial, virtually without comment, the district court denied the renewed motion to sever count 3 at the close of the evidence. (R. 289, TR., 1/23/15, ID 1816-19).

With respect to count 2 alleging that Terry Smith distributed oxycodone on or about September 9, 2011, resulting in Patty Smallwood's death, (R. 163, Third Superseding Indictment, ID 476-77), the evidence showed that Michael Johnson, M.D., at Georgia Health Associates, Tucker, Georgia, wrote a prescription for oxycodone and other drugs to Patty Smallwood on September 9, 2011. (R. 287, TR., 1/21/15, ID 1411-12, 1438; R. 288, TR., 1/22/15, ID 1687-89). Bill Stanley, an addict using 10 oxycodone a day, was Patty Smallwood's fiancé at the time of her death. He had known Smallwood for approximately 10 years and she had a daily drug habit from the time they met until the night she died. He testified that Smallwood obtained the oxycodone prescription a couple of days before she died on a trip to a Kentucky pain clinic, accompanied by him, his half sister, and Terry Smith, who drove. Bill Stanley also admitted he couldn't recall whether the pain clinic trip immediately before Smallwood died was to a Georgia or Kentucky clinic. He had no recollection of previously stating that Jim Harris was the driver

9

for the pain clinic trip a few days before Smallwood's death.

The prescription was filled at Hometown Pharmacy in Manchester. Upon filling the prescription, he and Smallwood were taken back to Terry Smith where Smith got some of the pills and they retained the rest.

After delivering pills to Terry Smith, Smallwood went home before Stanley. Bill Stanley and Patty Smallwood snorted oxycodone together the evening before she died. He then fell asleep on the couch.

Smallwood went to the hospital for a head injury, which he described as a black eye, approximately a week before she died. (R. 287, TR., 1/21/15, ID 1475-1510).

Jimmy Harris testified that he drove people on pain clinic trips sponsored by Terry Smith about 10-15 times. He never took more than two people at a time and didn't drive people to the pharmacy. He took Bill Stanley and Patty Smallwood on a trip to Georgia Health Associates to see Dr. Michael Johnson. Terry Smith was not on the trip. (R. 287, TR., 1/21/15, ID 1564-72).

Brandon Stanley, Bill's son, sold oxycodone and knew that Patty Smallwood also sold pills. He testified that Patty Smallwood was at Terry Smith's before she and Bill Stanley, accompanied by another girl, took the doctor's trip immediately before her death. They were all driven by Jim Harris. Subsequently, he was in Terry Smith's house when they returned from the trip "split the medicine up, [and]

10

went their separate ways". Big Pat Smallwood died within a day or two. (R. 288, TR., 1/22/15, ID 1670-73).

Jennifer Mathis is a pharmacy technician who worked at Community Drug from November, 2003 until it was shut down by the DEA. Community Drug records reflect that on September 9, 2011, she filled oxycodone, alprazolam and other prescriptions for Patty Smallwood and Bill Stanley written by Michael Johnson, M.D. Ms. Mathis recalled Sue Fox bringing Bill Stanley to have his own prescriptions and those for Patty Smallwood filled. Sue Fox was present when Bill Stanley had this prescription filled. (R. 288, TR., 1/22/15, ID 1684-96).

Patty Smallwood was a long term habitual drug user with a lengthy history of using and receiving oxycodone in substantial quantities. She took trips to get prescriptions for multiple people, including Suzanne Fox and Eugene Sloan. (R. 287, TR., 1/21/15, ID 1454-57).

Jared Becknell, Clay County Deputy Corner, responded to a call on September 10, 2011, where he met the sheriff and pronounced Patty Smallwood dead. He believed she had been dead for about 6 to 8 hours based upon the state of rigor mortis, and didn't observe any kind of trauma. He did not take photographs and described his cursory death investigation as pulling back Smallwood's clothes to determine if there was bruising, stab wounds, or other trauma, looking for pill bottles, and asking those present what they saw. He didn't recall finding any pill

bottles and the gentlemen present said he found her in the bed.  (R. 287, TR., 1/21/15, ID 1511-22).

Becknell would have been the one to order an autopsy but didn't because he felt that the death was either drug related or a heart attack, based upon Smallwood's age and obesity.  The toxicology report alone would determine if death was drug related, although he is not a toxicologist.  (R. 287, TR., 1/21/15, ID 1511-22).  The toxicology report indicated Smallwood had diazepam, alprazolam, THC, hydrocodone, and oxycodone present in her blood, which he drew from her heart.  The death certificate issued by the coroner's office opined that the death was accidental and caused by a combined drug intoxication.  (R. 287, TR., 1/21/15, ID 1516-21).

Mike Ward possesses chemistry degrees, retired after spending 33 years as a toxicologist with the Kentucky Medical Examiner's Office, working under George Nichols, M.D., (R. 289 TR., 1/23/15, ID 1780), currently operates a consulting firm, teaches at Eastern Kentucky University, and was retained by the U.S. Attorney's office to review Patty Smallwood's medical records.  (R. 287, TR., 1/21/15, ID 1523-25).

Mr. Ward agreed there was no autopsy and without it he couldn't rule out events such as a heart attack or stroke as the cause of death.  (R. 287, TR., 1/21/15, ID 1534).  Based upon his review of the medical records, the toxicology report

indicated that Smallwood had 4 central nervous system depressants in her system. In Mr. Ward's opinion oxycodone precipitated Smallwood's death but he agreed with the death certificate statement that the combined drug affect was the cause of death because all of the intoxicants present in Smallwood depressed the central nervous system. (R. 287, TR., 1/21/15, ID 1523-34).

George Nichols, M.D., retired after serving just over 20 years as the chief medical examiner for Kentucky. He currently operates a medical legal consulting business. He has taught at medical schools, practiced forensic pathology, and served as the director of both anatomic and clinical pathology laboratories. A clinical laboratory is where blood drawn for testing is sent. As chief medical examiner, he worked with the toxicology lab, including working with Mike Ward on a daily basis. He has interpreted hundreds, if not thousands, of toxicology reports. (R. 289, TR., 1/23/15, ID 1777-80).

Dr. Nichols noted that absent an autopsy, the cause of death had not been established, although, a toxicology report could have an impact. (R. 289, TR., 1/23/15, ID 1784). Dr. Nichols recognized that Smallwood's oxycodone level was in the toxic/lethal range, but that she also had two benzodiazepines and two opiates in her system. As an habitual drug user he would expect high concentrations. The percentage of post-mortem drug redistribution couldn't be determined. He noted that the heart is the worst location to draw blood for testing. All four of the drugs

13

in her system interacted with each other and caused respiratory depression.  (R. 289, TR., 1/23/15, ID 1785-88).

As a forensic pathologist, he couldn't state that oxycodone caused Smallwood's death.  (R. 289, TR., 1/23/15, ID 1789).  Dr. Nichols did agree that *if* an overdose was the cause of death, it was due to the combined drug effect.  (R. 289, TR., 1/23/15, ID 1803-05).

## SUMMARY OF ARGUMENT

The district court abused its discretion when it denied the motion to sever the belatedly brought felon in possession allegation from the drug distribution resulting in death count.  The district court acknowledged Terry Smith was prejudiced by denying severance, however, relied upon clearly erroneous facts and denied the motion to sever.

Second, no rational fact finder could conclude that either element of count 2, the distribution of oxycodone resulting in the death of Patty Smallwood, had been established beyond a  reasonable doubt.  The charge requires the United States to establish both that Terry Smith distributed oxycodone to Patty Smallwood and that his distribution of oxycodone to her was the " but for" cause of her death.  An examination of the record reveals that no rational fact finder could conclude beyond a reasonable doubt that Terry Smith distributed oxycodone to Patty Smallwood which caused her death.  Moreover, it is undisputed that there was no autopsy conducted.  Both experts, Mr. Ward retained by the United States and Dr. Nichols retained by Terry Smith, agreed that absent an autopsy, the cause of death could not be definitively determined.  Absent definitive determination of the cause of death whether oxycodone was the "but for" causation hasn't been proven beyond a reasonable doubt.

Finally, the cumulative impact of the errors alleged  requires reversal.

## FIRST ISSUE

The district court abused its discretion in denying Terry Smith's motion to sever count 3, alleging that he was a felon in possession of firearms, from the remaining counts for trial.

## STANDARD OF REVIEW

This Court reviews the denial of a motion to sever for an abuse of discretion. United States v. Smith, 197 F.3d 225, 230 (6th Cir. 1999).

## LAW AND ARGUMENT

Initially, the district court abused its discretion in denying his motion to sever pursuant to Fed. R. Crim.P. 14(a), not that joinder for purposes of the third superseding indictment was inconsistent with Fed. R. Crim. P. 8(a).

Mr. Smith concedes he has a laboring oar to pull because this Court reviews the denial of the motion to sever for an abuse of discretion. Admittedly, the proper joinder requires Terry Smith to establish that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable determination about guilt or innocence", United States v. Caver, 470 F.3d 220, 238 (6th Cir. 2006), before he can overcome the policy considerations favoring a joint trial. That is exactly what occurred below – improperly denying the motion to sever prevented the jury from making a reliable determination about Terry Smith's guilt or innocence on count 2, the drug

distribution resulting in death charge.

Since firearms are recognized as tools of the drug trade, the joinder of firearm and drug charges is generally permitted when the charges are "sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan". United States v. Chavis, 296 F. 3d 450, 459 (6th Cir. 2002). It is also well settled that a motion to sever a felon in possession count is viewed through a different prism since obvious dangers are inherent in trying a felon in possession count together with other charges due to the elements of 18 U.S.C. §922(g). Clearly, a felon in possession count "acts as a conduit through which the government may introduce otherwise inadmissible evidence of the defendant's prior convictions, thereby potentially tainting the reliability of the verdict rendered by the jury on other counts". United States v. McGuire, 2012 WL 668803 *6 (M.D. Tenn. 2012) quoting United States v. McCarter, 316 F.3d 536, 538 (5th Cir. 2002). Again, absent the felon in possession charge, the United States would have been unable to notify the jury that Terry Smith was a convicted felon during its case in chief on the drug distribution resulting in death charge. Fed. R. Evid. 404(b).

Herein, there is no temporal, logical, or factual connection between Terry Smith's alleged possession of firearms on August 21, 2013 and the alleged distribution of oxycodone in September 9, 2011 which, it was charged, resulted in

Patty Smallwood's death.  The chronology is important and accurately set out by the district court in its order denying severance pursuant to Rule 14(a).  (R. 185, Memorandum Opinion and Order, ID 607-08).

Terry Smith was tried on the third superseding indictment returned December 18, 2014.  (R. 163, Third Superseding Indictment, ID 476-80).  Terry Smith was initially charged with conspiracy to distribute oxycodone by complaint filed August 21, 2013.  (R. 1, Complaint, ID 1-10).  Thereafter, he was indicted for the same conspiracy charge the following day.  (R. 2, Indictment, ID 11-12).  A superseding indictment returned a couple months later alleged that, in addition to participating in the oxycodone distribution conspiracy, he distributed oxycodone resulting in death, and sought the forfeiture of 10 guns.  (R. 30, Superseding Indictment, ID 76-79).  Almost exactly a year later, on December 18, 2014, a third superseding indictment was returned.  It added, for the first time, the felon in possession charge.  (R. 163, Third Superseding Indictment, ID 477).  Recognizing the extraordinary prejudice he would suffer, most particularly with respect to the distribution of oxycodone resulting in death charge if the jury was able to learn that he was a convicted felon, Terry Smith promptly sought severance of the felon in possession count.  (R. 171, Motion to Sever Count 3, ID 503-05).

Upon consideration of the arguments, the district court denied the motion, contending that the prejudice it acknowledged was created by trying the counts

jointly could be cured by stipulations and limiting instructions. (R. 185, Memorandum Opinion/Order, ID 609).

The district court abused its discretion in denying the motion to sever. First, acknowledging the prejudice extant, it failed to consider and address the mandatory life imprisonment required if Terry Smith was convicted of count 2. Further, it failed to acknowledge the Hobson's choice Terry Smith faced with respect to stipulating that he was a convicted felon. Third, while it concluded that a temporal and logical connection amongst the charges existed, there was no explanation of it, and none existed. Fourth, the district court sought to minimize the timing of the felon in possession allegation, suggesting that Terry Smith wasn't surprised by it.

Prejudice, not surprise, is the focus of a severance decision and whether to sever a felon in possession charge from others is always a closer question because the defendant's prior record is an element. McGuire, *supra* at *6.

Herein, Terry Smith had been preparing to defend a drug distribution case carrying a mandatory term of life imprisonment for a full year. It wasn't until a mere month before the trial commenced on January 20, 2015 that a felon in possession count, making his prior record admissible, was brought. The United States was aware of the factual basis for the 922(g) allegation since the execution of a search warrant on August 21, 2013. (R. 166, Motion to Amend Indictment, ID

489-91). It essentially conceded that Mr. Smith's prior record was inadmissible on count 2 because it never even sought to get permission to introduce it pursuant to Fed. R. Evid. 404(b)(2).

Recognizing this, the United States brought the felon in possession charge belatedly to get the benefit of the unfair prejudicial impact the jury learning Terry Smith was a convicted felon would have on the deliberations with respect to count 2. While the district court acknowledged that a joint trial of both counts 2, 3 resulted in prejudice it denied the motion to sever. The record is silent on whether bifurcation was considered. In fact, the district court merely offered a limiting instruction and compelled Mr. Smith to either suffer the full blown prejudice by allowing the United States to prove his prior record or attempt to minimize the prejudicial impact on count 2 by stipulating that he was a convicted felon.

The trial evidence revealed that no weapons were seized at Terry Smith's residence, his wife Gerry had a concealed carry gun permit, firearms were seized from property in Berea, Kentucky leased by Mr. & Mrs. Smith, and none of the firearms seized had Terry Smith's fingerprints. (R. 287, TR. 1/21/15, ID 1440-44). Further, contrary to the United States' argument in opposition to severance (R. 173, Response in Opposition to Defendant's Motion to Sever, ID 508-14) merely one individual testified he ever saw Terry Smith with a firearm, (R. 288, TR., 1/22/15, ID 1682-83), while several testified that they had never seen Terry Smith

with a firearm or seen guns at his residence. (R. 287, TR., 1/21/15, ID 1483, 1582; R. 288, TR., 1/22/15, ID 1658; R. 289, TR., 1/23/15, ID 1770). Further, the United States' attempt to establish an altercation Terry Smith had while possessing a gun was inadmissible, (R. 288, TR., 1/22/15, ID 1658-60), despite using the alleged episode to support denying the severance.

There was no evidence that Terry Smith possessed a firearm in connection with the alleged distribution of oxycodone and Smallwood's death. (R. 287, TR., 1/21/15, ID 1475-1510). In fact, her live in boyfriend, Bill Stanley, was clear that he never saw Terry Smith with a gun. (R. 287, TR., 1/21/15, ID 1483). Clearly, the district court's conclusion that there was temporal and logical connection betweenTerry Smith's alleged possession of firearms on August 21, 2013, and his alleged distribution of oxycodone resulting in Patty Smallwood's death on September 9, 2011, was wrong. It was an abuse of discretion to deny severance by relying on this clearly erroneous finding. United States v. Grubbs, 773 F.3d 726, 731 (6th Cir. 2014).

Ultimately, Terry Smith stipulated that he was a convicted felon. (R. 288, TR., 1/22/15, ID 1720). The district court denied the motion to sever count 3 renewed at the close of the evidence, (R. 289, TR., 1/23/15, ID 1816-19), and, having the otherwise inadmissible evidence that Terry Smith had been a convicted felon before it, the jury verdict with respect to count 2, distribution of oxycodone

21

resulting in death and mandating life imprisonment, was tainted and unreliable.

## SECOND ISSUE

No rational fact finder could conclude that the United States established the elements of distribution of oxycodone resulting in death beyond a reasonable doubt. Therefore, the evidence is insufficient to support the verdict on Count 2.

## STANDARD OF REVIEW

This Court views the evidence presented in the light most favorable to the government and determines whether, from that perspective, any rational trier of fact could have found that essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Sykes, 292 F. 3d 495, 498-99 (6th Cir. 2002).

## LAW AND ARGUMENT

In considering an argument that a conviction must be vacated due to the insufficiency of the evidence presented at trial, the appellate court neither independently weighs the evidence nor judges the credibility of a witness who testified at trial. United States v. Talley, 164 F.3d 989, 986 (6th Cir. 1999). This Court simply determines whether, based upon the proof introduced, any rational fact finder could determine that each element of the offense was established beyond a reasonable doubt.

Herein, Terry Smith was convicted, *inter alia,* of knowingly and intentionally distributing oxycodone resulting in death (Count 2) contrary to 21

U.S.C. §841(a)(1). (R. 163, Third Superseding Indictment, ID 476-80). The elements of the substantive offense of distribution of oxycodone resulting in death are that: (1) the defendant knowingly or intentionally distributed oxycodone; and (2) death was caused by (resulted from) the use of that oxycodone. Burrage v. United States, __ U.S. __, 134 S.Ct. 881, 887 (2014). Neither element was proven beyond a reasonable doubt.

Quite simply, in order to convict on Count 2, it is beyond peradventure that the "resulting in" language requires the United States to establish, beyond a reasonable doubt, "but for" causation – that is, that Terry Smith's knowing, intentional distribution of oxycodone was the "straw that broke the camel's back" and actually caused Patty Smallwood's death. Burrage v. United States, *supra,* at 887-92; United States v. Miller, 767 F.3d 585, 591-93 (6th Cir. 2014). "But-for causation exists where use of the controlled substance 'combines with other factors to produce' death, and death would not have occurred 'without the incremental effect' of the controlled substance". United States v. Volkman, 797 F.3d 377, 392 (6th Cir. 2015) *quoting* Burrage v. United States, *supra,* at 888. Further, while the government needn't establish that Patty Smallwood's death was foreseeable to Terry Smith, it must establish, beyond a reasonable doubt, that he knowingly and intentionally distributed oxycodone to her and her death would not have occurred but-for his distribution. Burrage v. United States, *supra,* at 887.

This record precludes a rational juror from finding that either of the elements of count 2 had been established beyond a reasonable doubt.

First, with respect to the distribution element, the evidence that Terry Smith distributed oxycodone to Patty Smallwood which resulted in her death is limited to September 9, 2011 prescriptions for Smallwood  (R. 287, TR., 1/21/15, Ex. 15, ID 1411-12) written by Dr. Johnson, Georgia Health Associates,(R. 287, TR., 1/21/15, ID 1438; R. 288, TR., 1/22/15, ID 1687-89); the testimony of Bill Stanley, her live-in boyfriend at the time of her death,  (R. 287, TR., 1/21/15, ID 1475-1510); the testimony about Jimmy Harris about taking Patty Smallwood to GHA, (R. 287, TR., 1/21/15, ID 1563-72); the testimony of Brandon Stanley, (R. 288, TR., 1/22/15, ID 1671-73); and  the records from Community Drug introduced through Jennifer Mathis plus her testimony regarding the filling of the September 9, 2011 prescription for Patty Smallwood.  (R. 288, TR., 1/22/15, ID 1684-96).

A couple days before her death, Patty Smallwood was at GHA and obtained prescriptions for, *inter alia,* oxycodone from Michael Johnson, M.D. That pain clinic was subsequently shut down by the DEA and Dr. Johnson has been indicted for conspiracy to distribute oxycodone, although he has not been charged with the distribution of oxycodone resulting in the death of Patty Smallwood or anyone else. (R. 287, TR., 1/21/15, ID 1438; R. 288, TR. 1/22/15, ID 1689). Jimmy Harris picked Smallwood up at Terry Smith's house and drove both her and Bill Stanley,

her boyfriend, to GHA. Each received prescriptions from Dr. Johnson before Jimmy Harris drove them back to Terry Smith's house and dropped them off. (R. 288, TR., 1/22/15, ID 1673). Patty Smallwood's prescription was filled by Bill Stanley, an unforgettable guy, at Community Drug a day or two before she died. Sue Fox, who sponsored many runners on pain clinic trips to get oxycodone scripts, was present and waited for Bill Stanley to get the script filled. (R. 288, TR., 1/22/15, ID 1692-95). Patty Smallwood, an habitual user of oxycodone for years, also sold and distributed it. (R. 287, TR., 1/21/15, ID 1503-07; R. 288, TR., 1/22/15, ID 1672). She went to doctors to get oxycodone prescriptions for several people, including Sue Fox and Eugene Sloan. (R. 287, TR., 1/21/15, ID 1454). Community Drug has been shut down by the DEA, but neither it nor any of its employees have been charged with the distribution of oxycodone resulting in the death of Patty Smallwood. (R. 287, TR., 1/21/15, ID 1436-38; R. 288, TR., 1/22/15, ID 1685-86). After her prescription was filled, Patty Smallwood took it to Terry Smith and distributed a portion of the pills to him, keeping the remainder. (R. 287, TR., 1/21/15, ID 1485-86; R. 288, TR., 1/22/15, ID 1672-74).

The evidence that Terry Smith distributed the oxycodone to Patty Smallwood which resulted in her death on or about September 9, 2011 is virtually non-existent. Clearly any such evidence introduced does not rise to the level of

establishing beyond a reasonable doubt the distribution element necessary. Burrage, *supra* at 887.

Patty Smallwood had personally abused oxycodone for over a decade. She frequented doctors getting oxycodone prescriptions for several people including Sue Fox, a known sponsor of pain clinic runners. The oxycodone prescription for Patty Smallwood written a couple days before her death was filled at Community Drug, Jennifer Mathis was the pharmacy technician who filled the prescription brought in by Bill Stanley. The prescription was written by Michael Johnson, M.D. of Georgia Health Associates. Sue Fox brought Bill Stanley in and stayed with him when he filled the oxycodone prescriptions a couple days before Smallwood's death. According to Brandon Stanley, Bill Stanley's son, once Patty Smallwood's prescription was filled at Community Drug, he observed Smallwood and others at Terry Smith's house where "they split the medicine up, [and] went their separate ways". (R. 288, TR., 1/22/15, ID 1673). Jimmy Harris picked Smallwood and Bill Stanley up from Terry Smith's house, drove them to GHA, where each obtained an oxycodone prescription and returned them to Terry Smith's house. He expressly denied involvement in any transportation of Bill Stanley to Community Drug where the prescriptions were filled.

It is axiomatic that *if* oxycodone caused Patty Smallwood's death, she obtained it from a series of events, none of which involve proof that Terry Smith

distributed it to her.  Michael Johnson, M.D. wrote her an oxycodone prescription. She had her oxycodone prescription filled at Community Drug by Jennifer Mathis, the pharmacy technician.   Smallwood's boyfriend, Bill Stanley, took the prescription to be filled in the presence of Sue Fox, a known pain clinic trip sponsor for Patty Smallwood and others.  Terry Smith wasn't on the trip to get the prescription or at the pharmacy where the prescription was filled.   Once the prescription was filled, according to Brandon Stanley, Smallwood distributed some portion of the pills to Smith before she returned home with Bill Stanley and together both snorted oxycodone.

Next, regardless of the distribution element, the government has utterly failed to introduce evidence from which a rational fact finder could conclude that it has established, beyond a reasonable doubt, that "but-for" oxycodone distributed by Terry Smith, Patty Smallwood would be alive.

The sole evidence supporting the death causation element was the testimony of Bill Stanley regarding the oxycodone he did with Patty Smallwood the night before she died, (R. 287, TR., 1/21/15, ID 1475-1510); Jared Becknell, the Clay County Deputy Coroner who declared Patty Smallwood dead, (R. 287, TR., 1/21/15, ID 1511-22); Mike Ward a chemist retired from the Kentucky medical examiner's office now operating a consulting business, who was retained by the government to review medical records, (R. 287, TR., 1/21/15, ID 1522-35); Billy

Wombles, Patty Smallwood's nephew regarding injuries and her ER treatment after being beaten by Bill Stanley, (R. 289, TR., 1/23/15, ID 1755-64); James Gill, Clay County EMT and EMS responder, (R. 289, TR., 1/23/15, ID 1770-76); and George Nichols M.D., retired chief Kentucky medical examiner now operating a consulting firm, who was retained by Mr. Smith. (R. 289, TR., 1/23/15, ID 1777-1805).

The evidence introduced demonstrates that for over a decade Patty Smallwood was an obese, habitual user and distributor of oxycodone. She was seen at the emergency room for head trauma several days before her death, but didn't receive follow up care. The toxicology report indicated she had four CNS depressants in her system, but no autopsy was done.   (R. 287, TR., 1/21/15, ID 1514-21).

Upon review of the medical records available, in Mr. Ward's opinion, the precipitate cause of Smallwood's death was the oxycodone, although he agreed with the death certificate statement that the combined drug effect was the cause of death because all of the intoxicants present in Smallwood depressed the central nervous system.  (R. 287, TR., 1/21/15, ID 1528-31).  He opined that the level of oxycodone was consistent with a lethal level, but couldn't state whether it alone would have killed her. He conceded that, without an autopsy, he couldn't rule out

events such as a heart attack or stroke as the cause of death.  (R. 287, TR., 1/21/15, ID 1533-34).

Dr. Nichols essentially agreed that, absent an autopsy, the cause of death had not been established. (R. 289, TR., 1/23/15, ID 1784). Toxicology reports may have an impact, but do not establish a cause of death. He opined that the oxycodone level was in the toxic/lethal range, but since Smallwood had two benzodiazepines and two opiates in her system and was an habitual drug abuser, he would expect high concentrations. Further, the percentage of post mortem drug redistribution couldn't be determined and all four of the drugs in her system interact with each other and cause respiratory depression.  (R. 289, TR., 1/23/15, ID 1785-88).  He couldn't, as a forensic pathologist, state that oxycodone caused Smallwood's death.  (R. 289, TR., 1/23/15, ID 1789).  He did agree that, if an overdose was the cause of death, it was due to the combined drug effect, but had concerns that it was listed as the cause of death because, although it was a possible cause of death, no cause had been established.  (R. 289, TR., 1/23/15, ID 1777-1804).

Succinctly, since it is uncontraverted that no autopsy was conducted and both medical experts agree that the cause of death wasn't determined, no rational fact finder could conclude that the United States had proven, beyond a reasonable doubt, that oxycodone was the "but for" causation of Smallwood's death.  Since

this is an element of the offense to be proven beyond a reasonable doubt the evidence is insufficient and the conviction must be vacated.

## THIRD ISSUE

The cumulative effect of the trial errors deprived Terry Smith of the due process he is constitutionally guaranteed, thereby mandating the convictions be vacated and the case remanded for a new trial.

## STANDARD OF REVIEW

Upon analyzing each error, their cumulative effect must be considered because it "may result in a trial which is fundamentally unfair". United States v. Turner, 287 F. Appx. 426, 438 (6th Cir. 2008) *quoting* United States v. Hines, 398 F. 3d 713, 719 (6th Cir. 2005). A new trial is warranted when the cumulative effect of errors which are otherwise harmless has "deprived the defendant of a trial consistent with the constitutional guarantee of due process". United States v. Sypher, 684 F.3d 622, 628 (6th Cir. 2012).

## LAW AND ARGUMENT

In the unlikely event this Court determines that each error is individually harmless, it is axiomatic that the cumulative effect deprived Terry Smith of due process and resulted in a fundamentally unfair trial.

Count 2, which charged Terry Smith with distributing oxycodone resulting in death, carried a mandatory minimum term of life imprisonment without parole, if he was convicted. Literally, Terry Smith's freedom forever was at stake.

Knowledge that an individual is a convicted felon is so powerful and

32

devastating that jurors can consider that fact alone as evidence that a witness is not credible.    (Sixth Circuit Pattern Jury Instruction 7.05B).    Further, absent extraordinary limited circumstances, it is not admissible to establish that a defendant is guilty of the crime charged.  Fed. R. Evid. 404(b).

Herein, improperly denying the motion to sever count 3, the felon in possession charge, enabled the United States to establish that Terry Smith was a convicted felon during its case in chief with respect to count 2, the drug distribution resulting in death charge.  This unfairly prejudicial knowledge, which the jury had as it was deliberating the evidence with respect to count 2, denied Terry Smith due process and effectively watered down the quantum of evidence jurors required to convict on count 2.  Combined, the district court's errors resulted in a fundamentally unfair trial for Terry Smith.  This Court's jurisprudence compels vacating the convictions.

## CONCLUSION

Based upon the foregoing errors in the trial court, which rendered the verdict unreliable and denied Terry Smith due process, the convictions should be vacated and the case remanded for further proceedings.

Respectfully submitted,

S/Michael J. Stengel

_____
Michael J. Stengel (Tenn. #12260)
62 North Main Street, Ste. 401
Memphis, TN 38103
Telephone:  (901) 527-3535
Facsimile:  (901) 302-4867
E-Mail:  stengel12260@mjspc.com

Lawyer for Defendant/Appellant
Terry Smith

## CERTIFICATE OF SERVICE

I, Michael J. Stengel, do hereby certify that a copy of the foregoing Brief of Terry Smith, has been served upon AUSA's Charles Wisdom, Jr. and W. Samuel Dotson, via the Court's electronic filing system on this 6th day of January, 2016.

S/Michael J. Stengel

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7) FEDERAL RULES OF APPELLATE PROCEDURE</u>

I certify that the foregoing final brief, complies with Fed. R. App. P. 32(a) (7) (A) because it contains less than 40 pages. Moreover, it complies with Fed. R. App. P. 32(a) (7) (B) because it has 7237 words, as stated on the word processing system used in the typing of this document.


S/Michael J. Stengel

# ADDENDUM

Pursuant to 6th Cir. R. 28 and 30(g)(1), Terry Smith hereby designates the following documents from the electronic record of the district court as relevant to his appeal:

| RECORD ENTRY NO. | DESCRIPTION OF DOCUMENT | PAGE ID NUMBER |
|---|---|---|
| R. 1 | Complaint | 1-10 |
| R. 2 | Indictment | 11-12 |
| R. 13 | Minutes for Docket Call | |
| R. 30 | Superseding Indictment | 76-79 |
| R. 58 | Second Superseding Indictment | 143-46 |
| R. 163 | Third Superseding Indictment | 476-80 |
| R. 166 | Motion to Amend Indictment | 489-91 |
| R. 167 | Minutes for Arraignment | |
| R. 171 | Motion to Sever | 503-05 |
| R. 173 | U.S. Opposition to Severance | 508-14 |
| R. 181 | Smith's Response | 595-97 |
| R. 185 | Order Denying Motion to Sever | 607-10 |
| R. 193 | Information § 851 | 645-46 |
| R. 197 | Minutes:  Jury Trial Day 1 | |

| R. 198 | Minutes: Jury Trial Day 2 | |
| R. 200 | Minutes: Jury Trial Day 3 | |
| R. 202 | Minutes: Jury Trial Day 4 | |
| R. 207 | Minutes: Jury Trial Day 5 | |
| R. 208 | Jury Verdict | 761-62 |
| R. 211 | Motion for Judgment of Acquittal | 765-71 |
| R. 217 | U.S. Response to Motion for Judgment of Acquittal | 836-45 |
| R. 249 | Opinion and Order | 995-1031 |
| R. 250 | Minutes: Sentencing | |
| R. 258 | Judgment | 1049-54 |
| R. 259 | Notice of Appeal | 1055 |

| RECORD ENTRY NO. | TRANSCRIPT ID REFERENCES | DATE OF HEARING |
| --- | --- | --- |
| R. 287 | 1411-1412, 1436-44, 1454-57, 1475-1535, 1563-72, 1582-83 | 1/21/15 |
| R. 288 | 1658-60, 1670-74, 1682-96, 1720 | 1/22/15 |
| R. 289 | 1755-1764, 1770-1805, 1816-19 | 1/23/15 |