CASE NOS. 15-5850 & 15-5851

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA                    PLAINTIFF-APPELLEE

V.

TERRY R. SMITH                    DEFENDANTS-APPELLANTS
GERRY SMITH

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

---

BRIEF OF THE PLAINTIFF-APPELLEE
UNITED STATES OF AMERICA

---

KERRY B. HARVEY
UNITED STATES ATTORNEY

BY:    CHARLES P. WISDOM JR.
APPELLATE CHIEF
260 W. VINE STREET, SUITE 300
LEXINGTON, KENTUCKY 40507-1612
(859) 685-4903
Charles.Wisdom@usdoj.gov

COUNSEL FOR PLAINTIFF-APPELLEE

# TABLE OF CONTENTS

Table of Authorities ........................................................................... ii

Statement Regarding Oral Argument ....................................................vi

Statement of the Issues......................................................................1

Statement of the Case........................................................................1

Summary of the Argument...................................................................6

Argument

    I.     Terry and Gerry Smith's drug offenses were properly joined with
          Terry Smith's firearm offense ..............................................9

    II.    The evidence supports Terry Smith's conviction for
          distributing oxycodone that resulted in the death of the user .............17

    III.   Terry Smith's cumulative error claim fails as a matter of law...........23

    IV.   Gerry Smith's indictment was not constructively amended
          or modified by the evidence ..............................................24

    V.    Gerry Smith's conviction for conspiring to distribute oxycodone
          pills is supported by evidence of her guilt .........................................28

Conclusion ......................................................................................33

Certificate of Service

Designation of District Court Documents

# TABLE OF AUTHORITIES

## I. Cases

*Burrage v. United States*,
  134 S. Ct. 881 (2014) ..............................................................................17, 18, 22

*Jackson v. Virginia*,
  443 U.S. 307 (1979) ...........................................................................................29

*United States v. Atchley*,
  474 F.3d 840 (6th Cir. 2007) .......................................................................11, 16

*United States v. Benson*,
  591 F.3d 491 (6th Cir. 2010) ..............................................................................26

*United States v. Chavis*,
  296 F.3d 450 (6th Cir. 2002) ..........................................................................9, 12

*United States v. Combs*,
  369 F.3d 925 (6th Cir. 2004) ...................................................................... 24-25, 27

*United States v. Cope*,
  312 F.3d 757 (6th Cir. 2002) ..............................................................................16

*United States v. Cox*,
  357 F. App'x 629 (6th Cir. 2009) .................................................................. 23-24

*United States v. Critton*,
  43 F.3d 1089 (6th Cir. 1995) ................................................................................9

*United States v. Damra*,
  621 F.3d 474 (6th Cir. 2010) ..............................................................................30

*United States v. Deitz*,
  577 F.3d 672 (6th Cir. 2009) .......................................................... 9-10, 12, 15, 28

*United States v. Ferguson*,
  681 F.3d 826 (6th Cir. 2012) ..............................................................................26

ii

*United States v. Ford*,
    872 F.2d 1231 (6th Cir. 1989) ........................................................................25, 27

*United States v. Goodwin*,
    457 U.S. 368 (1982)...........................................................................................17

*United States v. Hathaway*,
    798 F.2d 902 (6th Cir. 1986) ...............................................................................25

*United States v. Kelley*,
    461 F.3d 817 (6th Cir. 2006) ...............................................................................29

*United States v. Kimbrel*,
    532 F.3d 461 (6th Cir. 2008) ...............................................................................24

*United States v. Kuehne*,
    547 F.3d 66 (6th Cir. 2008) .................................................................................30

*United States v. Lewis*,
    363 F. App'x 382 (6th Cir. 2010) .........................................................................10

*United States v. Mullen*,
    550 F.2d 373 (6th Cir. 1977) ...............................................................................10

*United States v. Newsom*,
    452 F.3d 593 (6th Cir. 2006) ...............................................................................24

*United States v. Paige*,
    470 F.3d 603 (6th Cir. 2006) ...............................................................................29

*United States v. Presley*,
    349 F. App'x 22 (6th Cir. 2009) ..........................................................................24

*United States v. Prince*,
    214 F.3d 740 (6th Cir. 2000) ...............................................................................29

*United States v. Rhodes*,
    314 F. App'x 790 (6th Cir. 2008) .........................................................................17

*United States v. Saadey*,
  393 F.3d 669 (6th Cir. 2005) ...............................................................10

*United States v. Sease*,
  659 F.3d 519 (6th Cir. 2011) ...............................................................30

*United States v. Sliwo*,
  620 F.3d 630 (6th Cir. 2010) ...............................................................28

*United States v. Soto*,
  794 F.3d 635 (6th Cir. 2015) ...............................................................12

*United States v. Stone*,
  218 F. App'x 425 (6th Cir. 2007) .........................................................17

*United States v. Strong*,
  No. 93-1048, 1993 WL 358535 (6th Cir. Sept. 15, 1993)....................23

*United States v. Swafford*,
  385 F. 3d 1026 (6th Cir. 2004) .............................................................14

*United States v. Trujillo*,
  376 F.3d 593 (6th Cir. 2004) ...............................................................23

*United States v. Volkman*,
  797 F.3d 377 (6th Cir. 2015) ................................................ 17-18, 22

*United States v. Warshak*,
  631 F.3d 266 (6th Cir. 2010) ................................................ 28-29

*United States v. Wheaton*,
  517 F.3d 350 (6th Cir. 2008) ...............................................................23

*United States v. Wilkins*,
  253 F. App'x 538 (6th Cir. 2007) .........................................................12

*United States v. Wilson*,
  168 F.3d 916 (6th Cir. 1999) ...............................................................27

## II. Statutes, Rules & Guidelines

18 U.S.C. § 922(g) ..................................................................................16

21 U.S.C. § 841 ......................................................................................28

21 U.S.C. § 841(a)(1) .............................................................................17

21 U.S.C. § 841(b)(1)(C) ........................................................................17

21 U.S.C. § 846 ......................................................................................28

Fed. R. Crim. P. 8(a) ......................................................................9, 10, 12

Fed. R. Crim. P. 8(b) ...........................................................................9, 10

Fed. R. Crim. P 14(a) ...........................................................................9, 11

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not request oral argument.

## STATEMENT OF THE ISSUES

*Terry Smith and Gerry Smith*

I.    Whether Terry and Gerry Smith's drug offenses were properly joined with Terry Smith's firearm offense.

*Terry Smith*

II.    Whether Terry Smith's conviction for distributing oxycodone that resulted in the death of the user is supported by sufficient evidence.

III.    Whether Terry Smith's cumulative error claim fails as a matter of law.

*Gerry Smith*

IV.    Whether Gerry Smith's indictment was constructively amended or modified by the evidence.

V.    Whether Gerry Smith's conviction for conspiring to distribute oxycodone pills is supported by evidence of her guilt.

## STATEMENT OF THE CASE

From March of 2011, through August 22, 2013, Terry Smith, assisted by his wife, Gerry, operated a drug trafficking organization in Kentucky.  [R. 261: Presentence Report at 1067 (¶ 3); *see* R. 287:  Richard Dalrymple, TR (Day 2) at 1392.]  The Smiths owned a trailer park and recruited family members, drug addicts, and drug users, including Bill Stanley, Patty Smallwood, Christopher

1

Gregory, Jimmy Harris, Gary Nantz, Rose Senters, Angela Smith, Betty Tipton, and Brandon Stanley, who, with the exception of Angela Smith, rented trailers from them to obtain prescription pain medication, including oxycodone, which the Smiths distributed. [R. 287: Bill Stanley, TR (Day 2) at 1476-94; R. 287: Christopher Gregory, TR (Day 2) at 1537-44; R. 287: Jimmy Harris, TR (Day 2) at 1560-70; R. 287: Gary Nantz, TR (Day 2) at 1577-83; R. 287: Rose Senters, TR (Day 2) at 1590-98; R. 287: Angela Smith, TR (Day 2) at 1604-10; R. 288: Betty Tipton, TR (Day 3) at 1649-51; R. 288: Brandon Stanley, TR (Day 3) at 1666-68.] The Smiths' plan was simple. They organized and financed trips to pain clinics in several states, including Florida, Georgia and Tennessee. [R. 287: Bill Stanley, TR (Day 2) at 1477-79, 1491; R. 287: Christopher Gregory, TR (Day 2) at 1540, 1542-43; R. 287: Jimmy Harris, TR (Day 2) at 1560-75; R. 287: Gary Nantz, TR (Day 2) at 1579-88; R. 287: Rose Senters, TR (Day 2) at 1594, 1601-02; R. 288: Betty Tipton, TR (Day 3) at 1650-55; R. 288: Brandon Stanley, TR (Day 3) at 1668-70.] Typically, Terry Smith would hire recruits to travel with him, Jimmy Harris, or another driver to the clinics. [R. 287: Bill Stanley, TR (Day 2) at 1481; R. 287: Christopher Gregory, TR (Day 2) at 1540, 1542; R. 287: Jimmy Harris, TR (Day 2) at 1560-70, 1572-73; R. 287: Gary Nantz, TR (Day 2) at 1579-81, 1587-88; R. 287: Rose Senters, TR (Day 2) at 1592-94, 1599; R. 288: Betty Tipton, TR (Day 3) at 1651-55; R. 288: Brandon Stanley, TR (Day 3) at 1670.]

2

Terry paid for all of the expenses, including the doctor visits, which could cost $250 a person, and to have the prescriptions for pain medication, including oxycodone, filled.  [R. 287:  Bill Stanley, TR (Day 2) at 1477-79, 1490; R. 287: Christopher Gregory, TR (Day 2) at 1543-44; R. 287:  Jimmy Harris, TR (Day 2) at 1565-66, 1576; R. 287:  Gary Nantz, TR (Day 2) at 1580; R. 287:  Rose Senters, TR (Day 2) at 1594, 1601-02; R. 288:  Betty Tipton, TR (Day 3) at 1651, 1657; R. 288:  Brandon Stanley, TR (Day 3) at 1668, 1670.]  Then, he took possession of the medication, which he sold or had someone else sell.  [R. 287:  Bill Stanley, TR (Day 2) at 1491-94, 1508; R. 287:  Christopher Gregory, TR (Day 2) at 1541-42, 1548, 1555-57; R. 287:  Jimmy Harris, TR (Day 2) at 1568, 1570, 1574; R. 287: Gary Nantz, TR (Day 2) at 1581; R. 287:  Rose Senters, TR (Day 2) at 1596-97, 1602; R. 288:  Betty Tipton, TR (Day 3) at 1656; R. 288:  Brandon Stanley, TR (Day 3) at 1669-70.]  He sometimes paid his recruits with prescription pills or reduced their rent.  [R. 287:  Bill Stanley, TR (Day 2) at 1482, 1493; R. 287: Christopher Gregory, TR (Day 2) at 1543-44; R. 287:  Gary Nantz, TR (Day 2) at 1579, 1581, 1585; R. 287:  Rose Senters, TR (Day 2) at 1592-93, 1597; R. 288: Betty Tipton, TR (Day 3) at 1651, 1657; R. 288:  Brandon Stanley, TR (Day 3) at 1672-73, 1677, 1688.]  Gerry kept a record of those involved in these trips. [R. 288:  Brandon Stanley, TR (Day 3) at 1671, 1678-79; R. 287:  Richard Dalrymple, TR (Day 2) at 1413-14, 1425-26.]  She and Terry also obtained

3

prescription medication from out-of-state clinics.  [R. 287:  Richard Dalrymple, TR (Day 2) at 1415-18, 1422-25; R. 287:  Angela Smith, TR (Day 2) at 1607-09.] And on one occasion, she organized drug sales and took possession of the proceeds of the sales.  [R. 287:  Christopher Gregory, TR (Day 2) at 1541, 1556-57.]  Gerry managed the proceeds of the drug sales.  [R. 288:  Brandon Stanley, TR (Day 3) at 1669-71.]  And she and Terry burned evidence behind their house.  [*Id*. at 1682.] Medical records from clinics and a pharmacy confirm many of the trips.  [R. 287: Richard Dalrymple, TR (Day 2) at 1397-407, 1413-18, 1422-25; R. 288:  Jennifer Mathis, TR (Day 3) at 1685-91.]

On September 10, 2011, Patty Smallwood, an addict who rented from the Smiths, died.  [R. 205:  Exhibit and Witness List at 757, Government Trial Exhibit 10, APX at 39; *see* R. 287:  Colloquy, TR (Day 2) at 1515 (exhibit 10 admitted); R. 287:  Jared Becknell, TR (Day 2) at 1512, 1519; R. 261:  Presentence Report at 1069 (¶ 17 n.2).]  The day before her death, Terry Smith took her and her live-in fiancé to a pain clinic in Georgia to obtain prescriptions for oxycodone pills. [R. 261:  Presentence Report at 1069 (¶ 17 n.2); R. 287:  Bill Stanley, TR (Day 2) at 1476, 1483-84, 1487.]  Terry financed the trip.  [R. 287:  Bill Stanley, TR (Day 2) at 1484-86.]  On their return trip to Kentucky, Patty and Bill had the prescriptions filled for Terry.  [*Id*. at 1485-86, 1491; R. 288:  Brandon Stanley, TR (Day 3) at 1672-73.]  Terry gave some of the pills to Patty and Bill.  [R. 287:  Bill

Stanley, TR (Day 2) at 1486; R. 288:  Brandon Stanley, TR (Day 3) at 1673.]  That

evening, Patty and Bill used the drugs.  [R. 287:  Bill Stanley, TR (Day 2) at 1487,

1509.]  Patty went to bed during the early morning hours.  [*Id*. at 1487-88, 1509-

10.]  Bill passed out on a couch.  [*Id*. at 1487, 1510.]  Patty died during the night.

[*Id*. at 1487; R. 288:  Brandon Stanley, TR (Day 3) at 1673.]  A toxicology report

showed that she had over four times the therapeutic level of oxycodone in her

system, as well as therapeutic levels of other drugs.  [R. 287:  Jared Becknell, TR

(Day 2) at 1514-17; R. 287:  Michael Ward, TR (Day 2) at 1530.]

During the drug conspiracy, witnesses saw Terry Smith in possession of

firearms.  [R. 287:  Gary Nantz, TR (Day 2) at 1582; R. 288:  Brandon Stanley, TR

(Day 3) at 1682-83.]  The police also found a cache of firearms and ammunition in

the Smiths' home.  [R. 288:  Ian Dalrymple, TR (Day 3) at 1698-705; R. 205:

Exhibit and Witness List at 758, Government Trial Exhibit 12, APX at 40; *see*

R. 288:  Colloquy, TR (Day 3) at 1701 (admission of exhibit 12).]

The Smiths were indicted for their drug activity.  [R. 163:  Third

Superseding Indictment at 476.]  A jury convicted them for conspiring to distribute

oxycodone.  [R. 208:  Verdict at 761.]  The jury also convicted Terry for

distributing oxycodone that resulted in Patty Smallwood's death and for possessing

a firearm after being convicted of a felony crime.  [*Id*. at 761-62.]  The district

court sentenced Gerry to imprisonment for ninety months.  [R. 257:  Judgment at

5

1044.]  The court sentenced Terry to imprisonment for life.  [R. 258:  Judgment at

1050.]  These appeals followed.  [R. 259:  Notice of Appeal at 1055; R. 264:

Notice of Appeal at 1086.]

## SUMMARY OF THE ARGUMENT

I.     Terry and Gerry Smith's drug offenses were properly joined with

Terry Smith's firearm offense.  The Smiths have failed to show that they were

prejudiced by the joinder.  Firearms are considered to be tools of the drug trade and

are properly joined with drug offenses when, as here, the crimes are sufficiently

connected on the face of the indictment.  Terry's claim that there is no temporal,

logical, or factual connection between his possession of firearms and his

distribution of oxycodone and Patty's Smallwood's death is baseless.  The dates of

the conspiracy and the dates he possessed and used firearms, as shown on the face

of the indictment, show a close connection between the offenses.  The Smiths'

numerous claims that they were prejudiced by the joinder of the firearm and drug

offenses are baseless.  Moreover, any prejudice was cured by the district court's

instructions and special admonition to consider proof regarding the firearms

offense only for the purpose of determining whether or not Terry committed that

specific criminal act, as well as his stipulation to his prior conviction.

II.    Terry Smith's conviction for distributing oxycodone that resulted in the death of the user is supported by sufficient evidence.  The evidence shows that Patty Smallwood went to a pain clinic in Georgia the day before her death for Terry, that she obtained prescriptions for oxycodone, that she had the prescriptions filled for Terry, that he gave her some of the oxycodone pills, that she snorted the pills, and that she died.  A forensic toxicologist testified that she had over four times the therapeutic range of oxycodone in her system and would not have died had she not consumed oxycodone.  Terry's expert could not rule out that oxycodone caused her death.  Terry's attempt to distance himself from the drug transaction fails in view of the evidence.  His claim that the evidence failed to prove the cause of Patty's death is misplaced.  The government only needed to prove that her consumption of oxycodone combined with other factors resulted in her death.

III.    Terry Smith's claim that cumulative, harmless errors — the joinder of the firearm and drug offenses and the sufficiency of the evidence supporting his conviction for distributing drugs that caused the user's death — mandate the vacation of his conviction, fails as a matter of law.  His sufficiency challenge is a guilt-based inquiry, which is not subject to a harmless error review.  Regardless, he has failed to show that any error in joining the firearm and drug counts affected the quantum of evidence, as he claims, necessary for his conviction.

7

IV.    Gerry Smith's indictment was not constructively amended or modified by the evidence.  The indictment alleged that she and Terry Smith conspired to distribute oxycodone pills from March 2011 through August 22, 2013.  The evidence offered at trial proved the charge and was entirely congruent with the facts alleged in the indictment.  The evidence did not alter or modify the elements of the crime charged in the indictment or prove facts materially different from those alleged in the indictment.  Gerry's claim that the government's closing argument constituted either a constructive amendment of the indictment or a variance fails as a matter of law because the claim is based on an erroneous legal principle — that an attorney's arguments are evidence or the equivalent of court instructions.  Her claim that the evidence at trial proved two conspiracies is unsupported.

V.    Gerry Smith's conviction for conspiring to distribute oxycodone pills is supported by evidence of her guilt.  Gerry failed to preserve her claim that the evidence is insufficient to convict her of the drug conspiracy.  Nonetheless, the record is not devoid of evidence pointing to her guilt.  The evidence shows that she obtained drugs from a pain clinic to be distributed by her husband and others, was given money generated by drug sales, and on occasion, gave drugs to Christopher Gregory to sale.  And the evidence shows that she, along with her husband,

destroyed evidence. Gerry's claim that the evidence failed to show that she agreed to join the conspiracy is baseless.

## ARGUMENT

**I.     Terry and Gerry Smith's drug offenses were properly joined with Terry Smith's firearm offense.**

An indictment "may charge a defendant in separate counts with [two] or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). An indictment also "may charge [two] or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "A strong policy presumption exists in favor of joint trials when charges will be proved by the same evidence and result from the same acts." *United States v. Critton*, 43 F.3d 1089, 1098 (6th Cir. 1995). However, "[i]f the joinder of offenses . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . ." Fed. R. Crim. P 14(a). "Rule 14 authorizes a defendant to move for severance in situations in which joinder of multiple offenses or defendants is proper under Rule 8, but nonetheless would be prejudicial to the defendant." *United States v. Chavis*, 296 F.3d 450, 457 (6th Cir. 2002). The Court looks to the allegations on the face of the

9

indictment to determine whether joinder was proper under either Rule 8(a) or (b). *See United States v. Deitz*, 577 F.3d 672, 691 (6th Cir. 2009) (Rule 8(a)); *United States v. Lewis*, 363 F. App'x 382, 391 (6th Cir. 2010) (Rule 8(b)). "The general test to determine whether severance is warranted involves weighing the possible prejudice to the defendant from the joinder against the public interest in avoiding duplicitous, time consuming trials in which the same factual and legal issues must be litigated." *United States v. Mullen*, 550 F.2d 373, 375 (6th Cir. 1977). A defendant must show "compelling, specific, and actual prejudice" in order to successfully establish a need for severance. *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005).

During the drug conspiracy, two witnesses observed Terry Smith in possession of a firearm. Gary Nantz testified that Terry carried a gun in the car on a trip to a pain clinic to obtain pills. [R. 287: Gary Nantz, TR (Day 2) at 1582.] Brandon Stanley also testified that he had seen Terry with a "nine-millimeter" firearm on a "couple [of] occasions." [R. 288: Brandon Stanley, TR (Day 3) at 1682-83; *see* R. 163: Third Superseding Indictment at 477 (listing 9 mm pistol).] Moreover, consistent with Nantz's and Stanley's testimony, the police found a substantial cache of weapons and ammunition in the Smiths' home in Berea. [R. 205: Exhibit and Witness List at 758, Government Trial Exhibits 12 & 16, APX at 40, 47; *see* R. 288: Colloquy, TR (Day 3) at 1714 (admission of exhibit

10

16).] They located a loaded handgun in a bedside table in the master bedroom that also contained prescription pill bottles for hydrocodone and diazepam. [R. 288: Ian Dalrymple, TR (Day 3) at 1699-700, 1702.] The police also found four rifles and six handguns in the residence. [*Id.* at 1698-705.] A safe in the closet of the master bedroom contained "the majority of the guns." [*Id.* at 1702] The police obtained the combination for the safe from Gerry. [R. 287: Richard Dalrymple, TR (Day 2) at 1440; R. 288: Ian Dalrymple, TR (Day 3) at 1703, 1706.]

Before trial, Terry Smith filed a motion under Rule 14(a) seeking to sever the firearm and drugs counts. [R. 171: Motion at 503.] He claimed that the counts should be severed because evidence related to the firearm offense would be irrelevant and prejudicial to the drug charges. [*Id.* at 503-05.] He also claimed that his "readiness" for trial was jeopardized because the firearm charge was added approximately one month before trial was scheduled to commence. [*Id.* at 505.] The district court denied his motion. [R. 185: Opinion and Order at 607.] Terry renewed his motion at the end of the evidence. [R. 289: Eric Edwards, TR (Day 4) at 1816.] Again, the court denied his motion. [R. 289: Court, TR (Day 4) at 1819.] This Court will review the district court's denial of Terry's motion to sever counts under Rule 14 for abuse of discretion. *United States v. Atchley*, 474 F.3d 840, 852 (6th Cir. 2007).

11

Gerry Smith, however, did not file a motion to sever her drug count from Terry Smith's firearm count. Nor did she join Terry Smith's motion. Thus, she must show plain error, that is, "some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned," that is "clear or obvious," that "affected the outcome of the district court proceedings," and that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015) (internal quotation marks omitted) ("[P]lain-error review applies to claims of misjoinder raised for the first time on appeal.").

Terry and Gerry Smith's drug offenses were properly joined with Terry Smith's firearm offense. They have failed to show that they were prejudiced by the joinder. Firearms are considered to be tools of the drug trade and are properly joined with drug offenses when the crimes, as here, are "sufficiently connected" on the face of the indictment. *See Chavis*, 296 F.3d at 459; *United States v. Wilkins*, 253 F. App'x 538, 541 (6th Cir. 2007) (citing *Chavis*, 296 F.3d at 456) (holding that offenses are "sufficiently connected" if connection apparent from facts in indictment); *see also Deitz*, 577 F.3d at 691 ("Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment."). Here, as the district court determined, "the temporal *and* logical connection between the alleged possession of firearms and the alleged drug trafficking appears on the face

of the criminal . . . indictment." [R. 185: Opinion and Order at 609.] The indictment alleges that Terry and Gerry Smith conspired to distribute and distributed oxycodone pills and, on a day during the conspiracy and after being convicted of a felony crime, Terry Smith illegally possessed ten firearms, including two firearms without a serial number and six large caliber handguns, which he used to commit and to facilitate the drug offenses. [R. 163: Third Superseding Indictment at 476-78.]

Terry's claim that there is "no temporal, logical, or factual connection" between his possession of firearms and his distribution of oxycodone and Patty's Smallwood's death,[1] *see* Terry Smith's Brief at 17-18, 21, is baseless. The date the police seized firearms from Terry, as reflected in the firearm count, is not determinative of whether the firearm and drug offenses are connected. The dates of the conspiracy and the dates Terry possessed firearms, as shown on the face of the indictment, is determinative because those dates show that the offenses are closely connection. Moreover, the evidence developed during trial supports

---

[1] Terry Smith erroneously claims that the district court's concluded "that there was temporal and logical connection between [his] alleged *possession of firearms on August 21, 2013,* and his alleged distribution of oxycodone resulting in Patty Smallwood's death on September 9, 2011, . . . ." Terry Smith's Brief at 21 (emphasis added). Rather, the district court noted that "the government included the factual basis for Court III in its criminal charges filed on August 21, 2013. [R. 185: Opinion and Order at 610; *see* R. 1: Complaint at 1 (file-stamped "AUG 21 2013").]

joinder of the offenses.  Firearms are commonly used by drug dealers for protection purposes.  [R. 286:  Richard Dalrymple, TR (Day 1) at 1383.]  *See United States v. Swafford*, 385 F. 3d 1026, 1030 (6th Cir. 2004) (upholding admission of testimony, as here, that "drug dealers carry firearms for intimidation and protection of their product").

Circumstantial evidence also indicates that the Smiths "took measures to obscure or obfuscate their activities."  [R. 288:  Court, TR (Day 3) at 1732-33.] Gerry obtained a concealed deadly weapons license roughly "two months before" law enforcement searched her residences.  [R. 287:  Richard Darymple, TR (Day 2) at 1444-45.]  This "indicates some effort on her part to distance the defendant, Terry Smith, from ownership of the guns.  Of course, we know that possession includes intent and control.  Here, it was within his residence."  [R. 288:  Court, TR (Day 3) at 1733.]  Moreover, although Gerry "gave the combination of the safe in Berea to law enforcement officers, . . . it doesn't show that Terry Smith didn't have the combination.  He may have had it and chosen not to give it."  [R. 288: Court, TR (Day 3) at 1733.]

Terry Smith's claims that he was prejudiced by the joinder of the firearm and drug offenses, Terry Smith's Brief at 16-22, are also baseless.  He claims that the district court, in abuse of its discretion, "failed to consider and address the mandatory life imprisonment" he faced if he was convicted of distributing drugs

14

that caused Smallwood's death, "failed to acknowledge the Hobson's choice [he] faced with respect to stipulating that he was a convicted felon," failed to explain how the offenses were temporally and logically connected, and "minimize[d] the timing of the felon in possession" charge. Terry Smith's Brief at 19. The court specifically acknowledged "the potential prejudice that may arise from joining Count III," the firearm count, but determined that "this prejudice may be cured through stipulations and jury instructions." [R. 185: Opinion and Order at 609.] The court also properly explained that the "the temporal *and* logical connection between the alleged possession of firearms and the alleged drug trafficking appears on the face of the criminal . . . indictment." [*Id*. at 609.] *See Deitz*, 577 F.3d at 691 (noting that appropriateness of joinder is determined by allegations on face of indictment). And the court correctly reasoned that Smith was not surprised by the firearm charge because the factual basis of the offense was set out in the complaint that the government filed earlier. [R. 185: Opinion and Order at 609-10.]

Gerry Smith also claims that she was prejudiced by evidence that her husband was prohibited from possessing firearms because he was a convicted felon, Gerry Smith's Brief at 36-37, but she was not charged with a firearm offense, and she has not explained how her husband's criminal past affected the jury's determination that she was involved in a conspiracy to distribute oxycodone, especially considering that her husband stipulated to having a prior conviction that

15

precluded him from possessing firearms and that the jury did not hear any detail of his criminal history. [*See* R. 288:  Court, TR (Day 3) at 1720 (reading stipulation to jury).]

Moreover, any prejudice caused by the joinder of the firearm and drug counts was cured by the district court's instructions and special admonition to consider proof regarding the firearms offense only for the purpose of determining whether or not Terry committed that specific criminal act, and by his stipulation to his prior conviction. *See Atchley*, 474 F.3d at 853 (holding that potential prejudice may be cured by stipulations and limiting instructions). [R. 204:  Jury Instructions at 734-35 (emphasizing that "*only*" Terry Smith charged with firearm offense); R. 290:  Court, TR (Day 5) at 1904-06 (same).]  Stipulating to a prior felony may be especially curative where, as here, a defendant is charged with violating 18 U.S.C. § 922(g) because the jury would not be influenced by the substance of the defendant's prior conviction. *Atchley*, 474 F.3d at 853.  Additionally, the jury is presumed capable to adhere to the court's limiting instructions and to consider each count separately. *United States v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002) (holding that jury is presumed capable of considering each count separately).

Terry Smith's assertion that the government "brought the felon in possession charge belatedly to get the benefit of the unfair prejudicial impact," Terry Smith's Brief at 20, is baseless.  Due process does not deprive the government of the

16

flexibility to add charges after a defendant has decided not to plead guilty and proceed to trial. *See United States v. Goodwin*, 457 U.S. 368, 379-80 (1982). Moreover, whether charged or not, evidence that Terry Smith possessed a firearm despite his legal disability was probative of his intent to engage in a conspiracy to distribute drugs because those who are involved with drugs have a propensity to carry guns. *See United States v. Rhodes*, 314 F. App'x 790, 792-93 (6th Cir. 2008); *see also United States v. Stone*, 218 F. App'x 425, 438-39 (6th Cir. 2007) (cited in *Rhodes*) (finding evidence of firearms relevant to conspiracy to sell narcotics charge).

## II. The evidence supports Terry Smith's conviction for distributing oxycodone that resulted in the death of the user.

To convict a defendant who unlawfully distributes oxycodone when "death or serious bodily injury results from the use of such substance," 21 U.S.C. § 841(a)(1), (b)(1)(C), the government must prove "two principal elements: (i) knowing or intentional distribution of [a drug], § 841(a)(1), and (ii) death caused by ('resulting from') the use of that drug, § 841(b)(1)(C)." *Burrage v. United States*, 134 S. Ct. 881, 887 (2014) (footnote omitted). "In other words, use of the drug must have been a but-for cause of the victim's death or injury. But-for causation exists where use of the controlled substance 'combines with other factors to produce' death, and death would not have occurred 'without the incremental

17

effect' of the controlled substance." *United States v. Volkman*, 797 F.3d 377, 392

(6th Cir. 2015) (citing *Burrage*, 134 S. Ct. at 888).

Terry Smith moved for an acquittal on all counts at the close of the

government's case, and he renewed his motion at the close of all of the evidence.

[R. 288:  Eric Edwards, TR (Day 3) at 1725-32; R. 289:  Eric Edwards, TR (Day 4)

at 1814-16.]  He claimed that the evidence was insufficient to convict him.

[R. 288:  Eric Edwards, TR (Day 3) at 1725-32; R. 289:  Eric Edwards, TR (Day 4)

at 1814-16.]  The district court denied his motion, and the jury found him guilty of

conspiring to distribute and distributing oxycodone.  [R. 288:  Court, TR (Day 3) at

1732-33; R. 289:  Court, TR (Day 4) at 1818; R. 208:  Verdict at 761.]  The jury

also found "that Patty Smallwood's death would not have occurred but for the

distribution of oxycodone by Terry Smith."  [R. 208:  Verdict at 762.]

In reviewing a sufficiency challenge, this Court will "ask whether, 'after

construing the evidence in favor of the Government, no rational trier of fact could

have found the essential elements of a crime beyond a reasonable doubt.'  The

standard is a 'steep climb,' and circumstantial evidence alone can defeat

a sufficiency challenge." *Volkman*, 797 F.3d at 390 (citations omitted).

There was sufficient evidence for a rational jury to find that Terry Smith

distributed oxycodone pills to Patty Smallwood and that her death resulted from

the use of oxycodone pills that he distributed to her.  Patty Smallwood died on

18

September 10, 2011. [R. 205: Exhibit and Witness List at 757, Government Trial Exhibit 10, APX at 39; *see* R. 287: Jared Becknell, TR (Day 2) at 1512, 1519; R. 261: Presentence Report at 1069 (¶ 17 n.2).] The day before her death, Patty, who was also known as "Big Momma" and "Big Pat," and others, including Bill Stanley, went to a pain clinic for Terry Smith. [R. 287: Richard Dalrymple, TR (Day 2) at 1411; R. 287: Bill Stanley, TR (Day 2) at 1484-85, 1491, 1497, 1500, 1506; R. 288: Brandon Stanley, TR (Day 3) at 1672-73; R. 289: Billy Wombles, TR (Day 4) at 1758.] Bill and Terry were cousins. [R. 287: Bill Stanley, TR (Day 2) at 1476.] Bill and Patty, who had been dating for ten years, rented a trailer from Terry. [*Id*. at 1476, 1483, 1502.] Terry paid for Patty's and Bill's doctor visits. [*Id*. at 1484-85.] Patty obtained oxycodone prescriptions, which she and Bill had filled on their return to Kentucky and delivered to Terry at Terry's house. [*Id*. at 1485-86; R. 288: Brandon Stanley, TR (Day 3) at 1672-73.] Terry kept a portion of the pills, and he gave the rest to Patty and Bill. [R. 287: Bill Stanley, TR (Day 2) at 1486; R. 288: Brandon Stanley, TR (Day 3) at 1673.] Patty and Bill went to their trailer and used the pills that Terry had given them. [R. 287: Bill Stanley, TR (Day 2) at 1487, 1509-10.] Patty, who was an addict, snorted the pills and went to bed "late," around "2:00 or 2:30," with a headache. [*Id*. at 1487-88, 1503, 1509-10.] Bill passed out on the couch and found Patty "dead in the bed" the next morning. [*Id*. at 1487, 1510; R. 288: Brandon Stanley, TR (Day 3) at 1673.]

19

Medical records from a pain clinic in Georgia show that "within a day or two days" of her death, the clinic's doctor prescribed her 42 alprazolam (2 mg.) pills, 154 oxycodone (30 mg.) pills, 84 oxycodone (15 mg.) pills, 20 naproxen (500 mg.) pills, and 20 omeprazole (20 mg.) pills. [R. 287: Richard Dalrymple, TR (Day 2) at 1411-12, 1453.]

The county coroner examined Patty's body and found no evidence of trauma. [R. 287: Jared Becknell, TR (Day 2) at 1511-13.] He determined that her "death was accidental and caused by a combined drug intoxication" from taking oxycodone, "Diazepam, a metabolite of diazepam, alprazolam, THC, which is marijuana metabolite, and hydrocodone or Lortab." [*Id*. at 1514.] She had a "very high amount of oxycodone and a relatively normal range of the other drugs." [*Id*. at 1516; *see id*. at 1517-18.] "The therapeutic range [of oxycodone] is between 10 and 100 nanograms per milliliter, and she had 467," or "4.67 times the therapeutic range." [*Id*. at 1514, 1517.]

Michael Ward, a forensic toxicologist, who "retired from the medical examiner's toxicology office in 2008 after thirty-three years of service," concluded that Patty "would not have died had she not consumed oxycodone on that night." [R. 287: Michael Ward, TR (Day 2) at 1523, 1530-321, R. 289: Court, TR (Day 4) at 1749-50.] He testified that this amount of oxycodone was "lethal." [R. 287: Michael Ward, TR (Day 2) at 1528.] He agreed with the coroner's determination

that Patty had died from combined drug intoxication.  He explained "that inasmuch as you have two opiates, hydrocodone and oxycodone, both working in the same fashion in depressing the central nervous system, causing a reduction in the ability for you to breathe."  [*Id*. at 1530.]  He also explained that "you've also got basically two benzodiazepines which are also affecting the central nervous system. So the combination of those certainly could be a contributing factor."  [*Id*.]  But without the other drugs, "that level of oxycodone would still be consistent with being a lethal level for an individual."  [*Id*. at 1534.]  Although he could not rule out another cause of death, he did not think that she could have compensated for having four times the therapeutic level of oxycodone in her system even considering any tolerance to the drug she may have built up over a period of time. [*Id*. at 1533-35.]

Similarly, George Nichols, a retired medical examiner, testified that "without an autopsy, you can never definitively determine the cause of death." [R. 289:  George Nichols, TR (Day 4) at 1778, 1784.]  But he admitted that Patty's oxycodone level was in the toxic range and that her death could be due to a combined drug effect.  [*Id*. at 1788-90, 1803.]  He examined her medical records and found no history of cardiovascular or respiratory problems.  [*Id*. at 1795, 1800.]  A week or so before her death, Patty went to hospital for a black eye. [R. 287:  Bill Stanley, TR (Day 2) at 1507.]  At that time, her heart and lungs were

21

all functioning normally. [R. 289: George Nichols, TR (Day 4) at 1795.] Thus, he

could not rule out that oxycodone caused her death. [*Id*. at 1799.] He admitted

that if postmortem drug redistribution raised the level of oxycodone, which was the

only drug in her system above therapeutic levels, other drugs in her system would

also have been higher, "and if you cut the level of oxycodone in half, [the level is]

still twice the therapeutic range." [R. 289: Colloquy, TR (Day 4) at 1798-99.]

Terry Smith's attempt to distance himself from the drug transaction that he

orchestrated fails. *See* Terry Smith's Brief at 27-28. He claims that he "wasn't on

the trip to get the prescription or at the pharmacy where the prescription was

filled," *id*. at 28, but he ignores his role as the sponsor and financier of this trip to

obtain prescriptions for oxycodone pills and his distribution of those pills to Patty.

[*See* R. 287: Bill Stanley, TR (Day 2) at 1484-87, 1509.]

Terry Smith's claim that the evidence failed to prove the cause of Patty's

death, Terry Smith's Brief at 25-31, is misplaced. "The Government was not

required to prove . . . that oxycodone was [Patty's] only cause of death. On the

contrary, but-for causation exists where a particular controlled substance — here,

oxycodone — combines with other factors . . . to result in death." *Volkman*, 797

F.3d at 395 (citing *Burrage*, 134 S. Ct. at 888) (internal quotation marks omitted).

### III.   Terry Smith's cumulative error claim fails as a matter of law.

To obtain a new trial on the basis of cumulative error, "a defendant must show that the combined effect of *individually harmless errors* was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) (emphasis added). "[E]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone . . . may cumulatively produce a trial setting that is fundamentally unfair." *Id*. (internal quotation marks omitted); *see United States v. Wheaton*, 517 F.3d 350, 371-72 (6th Cir. 2008) (same).

Terry Smith's claim of cumulative error, Terry Smith's Brief at 32-33, is misplaced. He argues that the improper joinder of the firearm and drug counts "watered down the quantum of evidence" necessary for his conviction, *id*. at 33, but his sufficiency challenge is a guilt-based inquiry, which is not subject to a harmless error review. "The sufficiency of the evidence standard and the harmless error standard are not the same." *United States v. Strong*, No. 93-1048, 1993 WL 358535, at *5 (6th Cir. Sept. 15, 1993). A sufficiency of the evidence review questions the sufficiency of the evidence supporting a guilty verdict, whereas a harmless error review questions the effect of a trial error on the guilty verdict. *See id*. If the evidence supporting a guilty verdict is insufficient, the conviction will be vacated. *See, e.g.*, *United States v. Cox*, 357 F. App'x 629, 632

(6th Cir. 2009) (reversing counts upon finding evidence insufficient to support conviction).  In contrast, "trial error[s] — that is, errors which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt — are appropriately subject to harmless-error review."  *United States v. Kimbrel*, 532 F.3d 461, 469 (6th Cir. 2008) (internal quotation marks omitted).  Thus, Terry's cumulative error claim rests on his claim of only one error — improper joinder of counts.  Terry Smith's Brief at 32-33.  And "[o]ne error is clearly not sufficient to reverse a conviction on the basis of cumulative error . . . ."  *United States v. Presley*, 349 F. App'x 22, 32 (6th Cir. 2009).

Regardless, Terry Smith has failed to show that any error in joining the firearm and drug counts affected "the quantum of evidence" necessary for his conviction.  He does not claim that the district court improperly instructed the jury, and the jury is presumed to have followed the court's instructions.  *United States v. Newsom*, 452 F.3d 593, 604-05 (6th Cir. 2006).

## IV.    Gerry Smith's indictment was not constructively amended or modified by the evidence.

A constructive amendment occurs "when an indictment's terms are effectively altered by the presentation of evidence and jury instructions that 'so

24

modify essential elements of the offense charged that there is a substantial likelihood the defendant [was] convicted of an offense other than that charged in the indictment.'" *United States v. Combs*, 369 F.3d 925, 936 (6th Cir. 2004) (quoting *United States v. Hathaway,* 798 F.2d 902, 910 (6th Cir. 1986)). "[A] constructive amendment, falls somewhere in the borderland between an actual amendment and a variance." *Hathaway*, 798 F.2d at 910. A variance occurs "when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989). "[A] variance crosses the constructive amendment line only when the variance creates a substantial likelihood that a defendant may have been convicted of an offense other than that charged by the grand jury." *Hathaway*, 798 F.2d at 911 (internal quotation marks omitted). A variance is not *per se* prejudical. *Id*. But amendments are deemed to be prejudicial. *Id*. at 910. Because variances between an indictment and the proof at trial are not *per se* prejudicial error, the burden is on the defendant to show that the variance affected his substantial rights. *Id*. at 910-11. The defendant must show "prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Id*. at 911 (internal quotation marks omitted).

25

On appeal, Gerry Smith for the first time claims that the indictment was constructively amended or modified by the evidence. *See* Gerry Smith's Brief at 17-26. Generally, this Court reviews such claims *de novo*. *United States v. Ferguson*, 681 F.3d 826, 829 (6th Cir. 2012). But Gerry's claim will be reviewed only for plain error because she did not raise it with the district court. *See United States v. Benson*, 591 F.3d 491, 497 (6th Cir. 2010) ("[W]here no specific objection is raised regarding a constructive amendment or a variance before the district court, [the Court is] limited to 'plain error' review on appeal.").

Gerry Smith cannot show plain error. The indictment alleged that she and Terry Smith conspired to distribute oxycodone pills from March 2011 through August 22, 2013. [R. 163: Third Superseding Indictment at 476.] The evidence offered at trial proved the charge. [R. 208: Verdict at 761.] *See infra* Argument V.

On appeal, Gerry Smith claims that the government's closing argument constituted either a (1) constructive amendment of the indictment, that is, the government's argument altered the terms of the indictment, or (2) variance, that is, the government's argument proved facts materially different from those alleged in the indictment. Gerry Smith's Brief at 23-25. Her claim fails as a matter of law because it is based on an erroneous legal principle — that an attorney's arguments are evidence or the equivalent of court instructions. They are not, as the district

26

court instructed the jury.  [R. 204:  Jury Instructions at 716 ("The lawyers'

statements and arguments are not evidence."); *id*. at 714 ("The lawyers have talked

about the law during their arguments.  But if what they said is different from what I

say, you must follow what I say.  What I say about the law controls.").  *See United

States v. Wilson*, 168 F.3d 916, 924 n.6 (6th Cir. 1999) (noting that attorneys'

closing arguments are not evidence).  Only the evidence presented at trial or the

instructions given by the court have the legal ability to alter the terms of the

indictment or prove facts materially different from those alleged in the indictment.

*See Combs*, 369 F.3d at 935-36 (defining constructive amendment); *Ford*, 872 F.2d

at 1235 (defining variance).

To the extent Gerry Smith claims that the evidence at trial proved two

conspiracies, *see* Gerry Smith's Brief at 17-18, 25-26, her argument fails.  Gerry

claims she gave hydrocodone pills to Christopher Gregory to sale, *see id*. at 18-21,

but she ignores evidence that indicates that she gave him oxycodone, not

hydrocodone, pills, as well as a wealth of other evidence that ties her to the

oxycodone conspiracy, particularly Brandon Gregory's and Angela Smith's

testimony.  *See infra* Argument V for a more complete discussion of Brandon's

and Angela's testimony.  Notwithstanding Gerry's claim, the transcript, in context,

indicates that Gregory misspoke when he used the term "hydrocodone 30s."

[R. 287:  Christopher Gregory, TR (Day 2) at 1556.]  The prosecutor's questions

27

plainly referred to oxycodone.  [*See id*. at 1543.]  Moreover, Gregory admitted on

cross-examination that the pills were "roxicets," a form of oxycodone, not

hydrocodone.  [*Id*. at 1556.]  And he testified that people were paying $50 apiece

for the pills, consistent with Officer Dalrymple's testimony regarding the street

value of a 30 milligram oxycodone pill.  [*Id*. at 1557; R. 286:  Richard Dalrymple,

TR (Day 1) at 1378.]  Regardless, contrary to her claim that hydrocodone was not

a part of the prescription medication prescribed by pain clinic doctors, *see* Gerry

Smith's Brief at 22, medical records show that the last doctor that Patty Smallwood

visited in Georgia prescribed hydrocodone for her.  [R. 287:  Richard Dalrymple,

TR (Day 2) at 1411-12, 1453.]

### V.  Gerry Smith's conviction for conspiring to distribute oxycodone pills is supported by evidence of her guilt.

A person who conspires to distribute a controlled substance is guilty of

a crime.  21 U.S.C. § 846.  "'To sustain a conviction for conspiracy under 21

U.S.C. § 846, the government must have proved:  (1) an agreement to violate drug

laws, in this case 21 U.S.C. § 841; (2) knowledge and intent to join the conspiracy;

and (3) participation in the conspiracy.'"  *United States v. Sliwo*, 620 F.3d 630, 633

(6th Cir. 2010) (quoting *Deitz*, 577 F.3d at 677); *see* 21 U.S.C. § 846.

This Court generally reviews challenges to the sufficiency of the evidence

"in the light most favorable to the prosecution" and will affirm the conviction if

28

"*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Warshak*, 631 F.3d 266, 308 (6th Cir. 2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Under this standard, a defendant challenging the sufficiency of the evidence bears a heavy burden.  *Id*. (quoting *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000)). In assessing the sufficiency of the evidence, this Court does not "weigh the evidence, assess the credibility of the witnesses, or substitute [its] judgment for that of the jury." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (internal quotations omitted).  All inferences are drawn and issues of credibility resolved in favor of the jury's verdict.  *Id*.  "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006).

At the close of the government's case-in-chief, Gerry Smith did not make a motion for a judgment of acquittal.  Following the district court's denial of Terry Smith's motion for a judgment of acquittal on all counts, the court asked her if she had a motion.  She responded, "I'll not spend your time with it at this point, judge." [R. 288:  Colloquy, TR (Day 3) at 1738.]  However, Gerry Smith made a motion for a judgment of acquittal at the close of all of the evidence.  She claimed that the evidence was insufficient to convict of the drug conspiracy.

29

[R. 289:  Stephen Charles, TR (Day4) at 1810-12.]  The district court denied her motion.  [R. 289:  Court, TR (Day 4) at 1813-14.]

"To properly preserve a sufficiency of the evidence issue for appeal, the defense must make a motion for a judgment of acquittal 'at the end of the prosecution's case-in-chief *and* at the close of evidence.'"  *United States v. Sease*, 659 F.3d 519, 522 (6th Cir. 2011) (emphasis added).  "Failure to make the required *motions* constitutes a waiver of the objections to the sufficiency of the evidence." *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (internal quotation marks omitted).  Gerry Smith did not move for a judgment of acquittal at both the close of the government's case-in-chief and the close of the evidence.  Thus, her challenge to the sufficiency of the evidence must be rejected unless her conviction represents a "manifest miscarriage of justice."  *See id*. at 697.  Under this standard, a defendant challenging the sufficiency of the evidence bears a heightened burden. The Court will "only reverse a conviction if the record is devoid of evidence pointing to guilt."  *United States v. Damra*, 621 F.3d 474, 494 (6th Cir. 2010).

The record is not devoid of evidence to convict Gerry Smith of conspiring to distribute oxycodone pills.  Christopher Gregory testified that he went to a pain clinic in Georgia for the Smiths and that he sold hydrocodone pills for Gerry. [R. 287:  Christopher Gregory, TR (Day 2) at 1538, 1541-42, 1556.]  Brandon Stanley also testified that he made two trips to a pain clinic for the Smiths.

30

[R. 288:  Brandon Stanley, TR (Day 3) at 1667-68.]  He said that Gerry handled the money most of the time.  [*Id*. at 1671.]  He also said, and the evidence confirms, that she kept a record of the names of those involved in the conspiracy. [*Id*. at 1671, 1679; R. 287:  Richard Dalrymple, TR (Day 2) at 1425-26.]  Brandon further testified that Terry Smith gave him pills, presumably oxycodone pills, to sell, and that he always gave money from drug sales to Gerry.  [R. 288:  Brandon Stanley, TR (Day 3) at 1669-71 (discussing 15 mg. and 30 mg. oxycodone pills), 1679 (discussing selling pills for Terry and always giving money to Gerry).]  And he testified that Gerry, along with Terry, burned prescriptions, pill bottles, and receipts behind their house.  [*Id*. at 1682.]  Moreover, medical records show that Gerry traveled to pain clinics, including two in Georgia, to obtain prescriptions for oxycodone pills.  [R. 287:  Richard Dalrymple, TR (Day 2) at 1413-22.]  The records also show that she was not taking the oxycodone that had been prescribed for her.  [*Id*. at 1415-18.]  Gerry's sister-in-law confirmed as much.  On one of Gerry's trips to Georgia, she passed a packet of sugar and crushed oxycodone pills, which she had planned to use so she would test positive for the use of oxycodone, to her sister-in-law when police came into the clinic.  [R. 287:  Angela Smith, TR (Day 2) at 1607-09.]  Her need to take a supplement containing oxycodone indicates that she was not seeking treatment for a drug addiction, but was obtaining pills for the criminal enterprise that she and Terry operated.

31

Gerry Smith's claim that the evidence failed to show that she agreed to join the conspiracy, Gerry Smith's Brief at 29-35, is baseless.  She acknowledges that the evidence shows that she visited pain clinics, gave an unindicted coconspirator drugs to sale, and handled money, *id*. at 30, which she claims he admitted could have come from the sale of antiques, *id*. at 34.  But she erroneously asserts that her criminal conduct, which involved hydrocodone, not oxycodone, was isolated and insufficient to show that she had joined the drug conspiracy.  *Id*. at 30-32.  Both Brandon Stanley and Christopher Gregory testified that they made trips to pain clinics for the Smiths and that they sold prescription pills for Gerry.  [R. 287: Christopher Gregory, TR (Day 2) at 1541-42, 1556; R. 288:  Brandon Stanley, TR (Day 3) at 1667-68.]  Brandon also said that the Smiths burned evidence behind their home.  [R. 288:  Brandon Stanley, TR (Day 3) at 1682.]  His and Gregory's testimony, along with evidence that Gerry visited pain clinics, indicates that she engaged in more than an isolated drug sale involving hydrocodone or Lortab, which, as Gerry fails to recognize, was also prescribed by the pain clinic doctor. [R. 287:  Richard Dalrymple, TR (Day 2) at 1411-12, 1453.]  Gerry similarly attempts to discount her sister-in-law's testimony.  *See* Gerry Smith's Brief at 33. But she ignores medical records showing that she had not taken the oxycodone pills that had been prescribed for her.  [R. 287:  Richard Dalrymple, TR (Day 2) at 1415-18.]  And she misconstrues Brandon Stanley's testimony about the reason he

32

gave her money.  Brandon plainly testified that he gave the proceeds of his drug sales to Gerry.  [R. 288:  Brandon Stanley, TR (Day 3) at 1679.]  However, he seemingly admitted that the names that she had recorded could pertain to renters or antique sales.  [*See id.*]

## CONCLUSION

Terry Smith's and Gerry Smith's convictions should be affirmed.

Respectfully submitted,

KERRY B. HARVEY
UNITED STATES ATTORNEY

By:    s/ Charles P. Wisdom Jr.
Appellate Chief
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 685-4903
Charles.Wisdom@usdoj.gov

33

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B).  According to a computer count, the principal

brief contains 8,127 words.

s/ Charles P. Wisdom Jr.
Appellate Chief


## CERTIFICATE OF SERVICE

On March 21, 2016, I electronically filed this brief through the ECF system,

which will send the notice of docket activity to:

Mathew J. Stengel
*Attorney for Terry Smith*

Gregory A. Napolitano
*Attorney for Gerry Smith*

s/ Charles P. Wisdom Jr.
Appellate Chief

## APPELLEE'S DESIGNATION OF DISTRICT COURT DOCUMENTS

| Record Entry | Description of Document | Page ID# |
|---|---|---|
| 1 | Complaint | 1-10 |
| 163 | Third Superseding Indictment | 476-80 |
| 171 | Motion | 503-06 |
| 185 | Opinion and Order | 607-10 |
| 204 | Jury Instructions | 713-56 |
| 205 | Exhibit and Witness List | 757-58 |
| 208 | Verdict | 761-62 |
| 257 | Judgment (Gerry) | 1043-48 |
| 258 | Judgment (Terry) | 1049-54 |
| 259 | Notice of Appeal (Terry) | 1055 |
| 261 | Presentence Report (Terry) | 1064-83 |
| 264 | Notice of Appeal (Gerry) | 1086-87 |
| 286 | Trial Day 1 Transcript | 1337-87 |
| 287 | Trial Day 2 Transcript | 1388-622 |
| 288 | Trial Day 3 Transcript | 1623-742 |
| 289 | Trial Day 4 Transcript | 1743-821 |
| 290 | Trial Day 5 Transcript | 1822-926 |